UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TYRONE A. BLACKBURN,
                Plaintiff,

-against-

ALAN FELDMAN
ABC LEGAL SERVICES, Inc.,
CAVALRY SPV I, LLC
As ASSIGNEE OF Citibank, N.A.,
MANDARICH LAW GROUIP LLP

                Defendants,

COMPLAINT
Civil Action No. 23-2380

**VERIFIED COMPLAINT**

Pro-se Plaintiff Tyrone A. Blackburn, Esq. ("Plaintiff") by and through himself, as against Defendants Alan Feldman, ABC Legal Services, Inc., 147 Prince Street, Suite 4-6, Brooklyn, NY 11201; Cavalry SPV I, LLC As Assignee Of Citibank, N.A., 500 Summit Lake Drive, Suite #400, Valhalla, NY 10595, Mandarich Law Group LLP, 5965 Transit Road, Suite 500, East Amherst, NY 14051 (collectively, "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following;

## INTRODUCTION

1. Congress enacted the Fair Debt Collection Practices Act (the "FDCPA") in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. section 1692(a).

2. At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and invasions of individual privacy." Id. Congress concluded that "existing laws…[we]re inadequate to protect consumers" and that "the effective collection of debts' does not require "**misrepresentation** or other **abusive debt collection practices**." 15 U.S.C. section 1692(b) & (c).

3. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors and their authorized agents and has

1

determined that abusive debt collection practices contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and invasions of individual privacy.

4. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C section 1692, et seq., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses, such as the actions of the Defendants detailed below.

## **NATURE OF THE ACTION**

5. Plaintiff brings this action under section 1692 et seq. of title 15 of the United States Code, commonly referred to as the Fair Debt Collections Practices Act ("FDCPA").
6. The present action arises out of the unfair and deceptive actions taken by the defendants in a previous action against Plaintiff. The previous action resulted in a wrongfully obtained default judgment against Plaintiff.
7. The default judgment issued in the underlying matter appears to have resulted from the Defendants' use of "sewer service." This term has come to be used to refer to debt collectors intentionally failing to properly serve process on debtors, allowing them to obtain default judgments when those debtors do not respond to suits.
8. Plaintiff is seeking damages for 2 million dollars, declaratory and injunctive relief.

## **PARTIES**

9. Plaintiff Tyrone Anthony Blackburn is a resident of the State of New York.
10. Plaintiff is a "consumer" as defined by the FDCPA, 15 USC section 1692 a(3).
11. Defendant Alan Feldman is a resident of the state of New York and, at the time of the events that gave rise to this action, was an employee and authorized agent of ABC Legal Services, Inc., Cavalry SPV I, LLC, as Assignee of Citibank, N.A., and Mandarich Law Group LLP.
12. Defendants ABC Legal Services is a corporation engaged in providing service of process with a principal place of business located at 147 Prince Street, Suite 4-6, Brooklyn, NY 11201.
13. Defendant Cavalry SPV I, LLC, Assignee of Citibank, N.A., is a law firm engaged in collecting debts with a principal place of business located at 500 Summit Lake Drive, Suite #400, Valhalla, NY 10595.

14. Defendant Mandarich Law Group LLP, 5965 Transit Road, Suite 500, East Amherst, NY 14051, or 6300 Canoga Ave #1700, Woodland Hills, CA 91367-8050 (collectively, "Defendants"), by and through their attorneys.
15. Defendants Alan Feldman, ABC Legal Services, Cavalry SPV I, LLC, and Mandarich Law Group LLP are "debt collectors" as defined and used in the FDCPA under 15 USA section 1692 a (6).
16. Defendant ABC Legal Services is a debt collector in relation to collection activities that are not directly related to the service of process, which include but are not limited to acting as an agent for collection attorneys by filing collection lawsuits on the attorney's behalf and regarding the writing and production of the affidavit of service.
17. Defendant Alan Feldman is a shady disgraceful New York-licensed process server under license #2058467.

## FACTUAL ALLEGATIONS

18. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.
19. Defendants Cavalry SPV I, LLC, and Mandarich Law Group LLP allege that Plaintiff owes a debt ("the debt").
20. The debt was primarily for personal purposes and is, therefore, a "debt" as defined by 15 U.S.C. section 1692 a(5).
21. The Original Creditor is Citibank, N.A.
22. The Current Creditor is Cavalry SPV I, LLC.
23. Sometime after the incurrence of the Debt, Plaintiff fell behind on payments owed.
24. After that, at an exact time known only to Defendants Alan Feldman, ABC Legal Services, Mandarich Law Group LLP, and Cavalry SPV I, LLC, as Assignee of Citibank, N.A., the debt was assigned or otherwise transferred to the Defendants for collection.
25. After that, at an exact time known only to Defendant \Cavalry SPV I, LLC as Assignee of Citibank, N.A. retained Defendant Mandarich Law Group LLP to collect the debt.

## COLLECTION LAWSUIT

26. On or about 10/17/2019, Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., through its attorneys, Defendant Mandarich Law Group LLP, commenced a lawsuit captioned Cavalry SPV I, LLC, as assignee of Citibank, N.A. v. Tyrone A, bearing the Index Number

CV-030895-19/KI (hereinafter the "Lawsuit"), filed in the Civil Court of New York, County of Kings.

27. Plaintiff was never served with the lawsuit.
28. However, on or around October 25, 2019, Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., filed a fraudulent Affidavit of Service with the Court in the lawsuit. **See Exhibit A.**
29. The fraudulent Affidavit of Service was written and attested to by Defendants ABC and Feldman. Id.
30. Within this fraudulent Affidavit of Service, Defendants attested that substitute service was effectuated on October 25, 2019, upon "John Doe, WHO REFUSED TO GIVE NAME, ROOMMATE, CO-RESIDENT, who accepted service a black-haired black male approx. 25-35 years of age, 6'0" – 6'2" tall and weighing 200-240lbs." Id.
31. No person located at the alleged place of service even comes close to matching that description.
32. When the alleged substitute service was effectuated, Plaintiff resided at 1083 E. 58th Street, Brooklyn, NY 11234. NOT 1242 E. 80th Street, 3rd Floor, Brooklyn, NY 11236 ("place of service"), the alleged location where Defendant Feldman purportedly executed service.
33. According to the residents of the place of service, at the time when the alleged substitute service was effectuated, a 59-year-old woman was living there who was approximately 5'2" tall, a 14-year-old boy was living there who was approximately 5'4" tall, and a 10-year-old girl living there who was 4'9" tall. THERE WAS NO BLACK MALE, approx. 25-35 years of age, 6'0" – 6'2" tall and weighing 200-240lbs.
34. Neither Plaintiff nor any of the residents of the place of service resembled a 25-35-year-old black male in 2019 or resembled one in 2023.
35. Furthermore, the 59-year-old woman who resided at the place of service on October 25, 2019, was either at work or on her way to work at 7:49 am, and the two minor children were at school at the time when the alleged substitute service was effectuated.
36. These inaccurate and deceptive statements are a clear example of a pattern of "sewer service" in an attempt to quickly obtain default judgments.
37. Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., knew or should have known that the fraudulent Affidavit of Service was false and still used it to proceed further with the lawsuit.

38. Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., knowingly used this fraudulent Affidavit to Service to proceed further with the lawsuit.
39. Accordingly, Plaintiff never received notice that a lawsuit was filed against him and was robbed of the opportunity to properly defend himself against the allegations contained in the lawsuit.
40. As a result of the fraudulent Affidavit of Service, Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., obtained a default judgment against Plaintiff wrongfully.
41. On January 12, 2022, a wrongfully obtained default judgment in the amount of $4,578.86 was entered against Plaintiff. **See Exhibit B.**
42. Plaintiff sustained injury in that he now has to defend this lawsuit that he did not receive proper service, and this case will appear in the public record.

### Seeking to Collect on the Default Judgement

43. Upon information and belief, on or around June 2022, Plaintiff received information from his Credit Monitoring Service that a Default Judgment was entered against him – this was the first time he became aware of the lawsuit and wrongfully obtained default judgment against him.
44. Plaintiff was stunned to read, "a Judgement was entered on January 12, 2022, in favor of Cavalry SPV I, LLC, as assignee of Citibank, N.A., Judgement Creditor and against Tyrone A. Blackburn, in the amount of $4,578.86. Id.
45. As a result, Plaintiff made a trip to the Civil Court of New York, County of Kings, and obtained a copy of the fraudulent Affidavit of Service.
46. Plaintiff is filing an Order to Show Cause to vacate the wrongfully obtained default judgment against him.
47. Notably, under CPLR section 317,

> A person served with a summons other than by personal delivery to his or to his agent for service designated under rule 318, within or without the state, who does not appear may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry, upon a finding of the Court that he did not personally receive notice of the summons in time to defend and has a meritorious defense. If the defense is successful, the Court may direct and enforce restitution in the same manner and subject to the same conditions as where a judgment is

reversed or modified on appeal. This section does not apply to an action for divorce, annulment, or partition.

48. Additionally, under CPLR section 5015(a)(3), "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just … upon the ground of … fraud, misrepresentation, or other misconduct of an adverse party"

## **DEFENDANT FELDMAN'S HISTORY OF FAILURE TO SERVE PROCESS AND FABRICATED AFFIDAVITS OF SERVICE**

49. Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A., retained Defendant ABC to serve Plaintiff with the lawsuit.

50. Defendant ABC's employee Defendant Feldman is the process server that allegedly served Plaintiff with the lawsuit.

51. 6 RCNY section 2-234 requires licensed process servers to "at all times strictly and promptly conform to all laws, rules, regulations, and requirements of the federal, state and municipal authorities relating to the conduct of licensees and the service of process in the State of New York and the preparation, notarization, and filing of affidavits of service and other documents now in force or hereafter adopted during any license period."

52. Notably, Defendant Feldman has an extensive history of being accused of violating 6 RCNY section 2-234 by failing to serve process in compliance with CPLR section 308 and fabricating affidavits of service in over twenty matters.

53. On or around February 22, 2016, Defendant Feldman's process server license renewal application was denied by the NYC Department of Consumer Affairs "based on the Department's determination that you are not fit to be licensed … due to your failure to maintain standards of integrity, honesty, and fair dealing required of licensees." **See Exhibit C.**

54. The NYC Department of Consumer Affairs' February 22, 2016, denial letter then lists twenty-five matters in which Defendant Feldman allegedly violated 6 RCNY section 2-234 by failing to serve process in compliance with PLR section 308 and fabricating affidavits of service. Id.

55. As a result of the NYC Department of Consumer Affairs' denial of his process server license renewal application, Defendant Feldman filed three petitions, against the City of New York and Lorelei Salas, Commissioner of the New York Department of Consumer Affairs, in the Supreme Court of the State of New York, County of New York.

6

56. On or around April 27, 2018, the Honorable Judge Lucy billings signed and entered a Stipulation of Settlement in Defendant Feldman's above-referenced three petitions, wherein Defendant Feldman and the City of New York and Lorelei Salas agreed to the following:

> 3. [Defendant Feldman] shall pay … a fine in the sum of $3,000.00 for [Defendant Feldman's] alleged violations of the laws and rules governing process servers.
>
> 4. Within five (5) days of {Defendant Feldman's] payment of the fines outlined in paragraph 3 herein, DCA shall reinstate license number 2058467 and grant [Defendant Feldman's] renewal license application for license number 2058467 … under the following terms and conditions:
>
> (a) [Defendant Feldman] shall be on probation until May 1, 2019.

**See Exhibit D.**

57. Almost six months after Defendant Feldman's probationary period ended, staying true to form, Defendant Feldman **failed** to serve Plaintiff with the lawsuit properly and fabricated the fraudulent Affidavit of Service, used by Defendant Cavalry SPV I, LLC, as assignee of Citibank, N.A. to obtain a default judgment against Plaintiff wrongfully.

58. Here, Mr. Blackburn brings this present action due to the unfair and deceptive practices carried out by Defendants in the Lawsuit. As a result of Defendant's actions, Plaintiff has suffered actual damages in his attempt to resolve the matter regarding the wrongfully obtained default judgment against him.

59. Feldman and ABC were sued in Heron v. Midland Funding LLC, et al.; 1:21-cv-03216-LDH-PK. **See Exhibit E**.

60. In Heron, Feldman and ABC were accused of engaging in the exact same deceitful and deceptive practices, and in fact, Feldman submitted an eerily similar, if not identical, affidavit of service to secure the default judgment against Heron, as he did to secure the default judgment against Plaintiff Blackburn. **See Exhibit F**.

61. As you would see in Exhibit F, the only difference in the affidavit of services between Heron and Plaintiff Blackburn is that Feldman and ABC stated that the alleged "John Doe, WHO REFUSED TO GIVE NAME, ROOMMATE, CO-RESIDENT, who accepted service a black-haired black male" was "approx. 35-45 years of age, 6'0" – 6'2" tall and weighing 200-240lbs." as opposed to being "approx. 25-35 years of age, 6'0" – 6'2" tall and weighing 200-240lbs."

62. Another important fact is that these affidavits were purportedly served within 3 days of each other.

**FIRST CAUSE OF ACTION**
**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C section 1692c(b)**
**(Against Defendants Feldman, ABC, Cavalry as Assignee for Citibank and Mandarich)**

63. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

64. 15 U.S.C. section 1692c(b) prohibits a debt collector from communicating with anyone except the consumer, consumer's attorney, or credit bureau concerning the debt.

65. Defendants Feldman, ABC, Cavalry, As Assignee for Citibank and Mandarich, violates 15 U.S.C. section 1692c(b) by sending Plaintiff an Information Subpoena and Questionnaire regarding the wrongfully obtained default judgment against Plaintiff.

66. In the underlying case, the wrongful actions taken by Defendants Feldman, ABC, Cavalry As Assignee for Citibank, and Mandarich are precisely what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief due to Defendants Feldman, ABC, Cavalry, As Assignee for Citibank and Mandarich's blatant violations.

**SECOND CASE OF ACTION**
**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C. section 1692e et seq.**
**(Against Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich)**

67. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

68. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. section 1692e.

69. According to 15 U.S.C. section 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with any debt collection.

70. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated said section

a. By failing to serve Plaintiff with the lawsuit, in violation of section 1692e(10);
    b. By using a fraudulent Affidavit of Service to wrongfully obtain a default judgment against Plaintiff, in violation of section 1692e(10);
    c. By falsely representing the character, amount, or legal status of the debt in violation of section 1692e(2)(A);
    d. By sending Plaintiff an information Subpoena and Questionnaire regarding the wrongfully obtained default judgment against Plaintiff;
    e. By reason thereof, Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich are liable to Plaintiff for judgment that Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich's conduct violated section 1692e et seq. of the FDCPA, actual damages, statutory damages, and costs.
71. Furthermore, courts within the Second Circuit have found that violations of the FDCPA occur when defendants have engaged in the practice of sewer service. See Polanco, 930 F. Supp. 2d 547 (S.D.N.Y.2015).
72. In Polanco, the Court denied the Defendant's motion for summary judgment finding that a question of fat existed regarding whether it had engaged in sewer service in order to obtain a default judgment against the Plaintiff. Id. At 552. The facts here are nearly identical. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich carried out sewer service to wrongfully obtain a judgment against Plaintiff.
73. The actions taken here by Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich in wrongfully obtaining a default judgment without properly serving process on Plaintiff go against fundamental notions of fairness and due process.
74. In the underlying case, the wrongful actions taken by Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich are precisely what Congress attempted to protect consumers against in passing the FDCPA. Plaintiff is therefore entitled to relief due to Defendants Feldman, ABC, Calvary As Assignee of Citibank, N.A., and Mandarich's and PFW's blatant violations.

**THIRD CAUSE OF ACTION**
**Use of False, Deceptive, and Misleading Representations**
**15 U.S.C section 1692e et seq.**
**(Against Defendants ABC and Feldman)**

75. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

76. Defendants ABC's and Feldman's debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. section 1692e.

77. According to 15 U.S.C. section 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with any debt collection.

78. Defendants ABC and Feldman violated said section by:
    a. Fabricating a fraudulent Affidavit of Service in violation of section 1692e(10);
    b. The reason thereof, Defendants ABC and Feldman are liable to Plaintiff for judgment that Defendants ABC and Feldman's conduct violated section 1692e et seq. of the FDCPA, actual damages, statutory damages, and costs.

79. Under section 1692a(6)(D), there is a process server exemption from liability under the FDCPA.

80. However, "a process server who goes 'beyond being merely being a messenger … and engages in prohibited abusive or harassing activities to force an individual to repay a debt' cannot claim the exemption's protections." Sykes v. Mel Harris & Assocs., LLC 757 F. Supp. 2d 413, 423.

81. Because the FDCPA protects process servers only 'while' they serve process, the [process server] defendants' alleged failure to serve plaintiffs' process and provision of perjured affidavits of service remove them from the exemption. On these facts, their conduct would be actionable under FDCPA." Id.

82. In the underlying case, the wrongful actions taken by Defendants ABC and Feldman are precisely what Congress attempted to protect consumers against in passing the FCPA. Plaintiff is therefore entitled to relief due to Defendants ABC's and Feldman's blatant violations.

**FOURTH CASE OF ACTION**
**Use of Unfair or Unconscionable Means in Attempt to Collect A Debt**
**15 U.S.C. Section 1692**
**(Against Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich)**

83. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

84. Defendants' debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. section 1692f.

85. According to section 1692f, a debt collector may not use any unfair or unconscionable means to collect or attempt to collect any dept.

86. Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. Sutton v. Fin. Recovery Servs., 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

87. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated this section by failing properly serve Plaintiff.

88. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated this section by using a fraudulent affidavit of service to obtain a default judgment against Plaintiff wrongfully.

89. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated this section by sending Plaintiff an Information Subpoena and Questionnaire regarding the wrongfully obtained default judgment against Plaintiff.

90. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich is guilty of violating the FDCPA, and Plaintiff is entitled to recover damages.

**FIFTH CAUSE OF ACTION**
**Use of unfair or unconscionable Means in an Attempt to Collect A Debt**
**15 U.S.C. Section 1692f**
**(Against Defendants ABC and Feldman)**

91. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

92. Defendants' debt collection efforts attempted and/or directed towards Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. section 1692f.

93. According to section 1692f, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

94. Although Congress has not defined "unfair or unconscionable" actions within the statute, it has been interpreted based on its plain meaning by at least one New York court. Sutton v. Fin. Recovery Servs., 121 F. Supp. 3d 309 (E.D.N.Y. 2015).

95. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated this section by failing to serve plaintiffs properly.

96. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich violated this section by using a fraudulent affidavit of service to obtain a default judgment against Plaintiff wrongfully.

97. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich is guilty of violating the FDCPA, and Plaintiff is entitled to recover damages.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
**(Against Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich)**

98. Plaintiff repeats, reiterates, and incorporates the allegations in all previous paragraphs of this Complaint with the same force and effect as if the same were set forth at length herein.

99. As a result of Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich's unlawful actions and clear violations of the FCPA, Plaintiff has suffered emotional distress.

100. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich took action to collect on the wrongfully obtained default judgment more than a year after wrongfully obtaining the default judgment against Plaintiff.

101. Furthermore, Defendants Calvary, As Assignee of Citibank, N.A., and Mandarich sent Plaintiff an Information Subpoena and Questionnaire regarding the wrongfully obtained default judgment against Plaintiff.

102. Traditionally, to establish a successful claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause server emotional distress, (3) a causal connection between the conduct and the injury, and (4) server emotional distress." Bender v. City of New York 78 F.3d 7878 (2d Cir. 1996).

103. Although there is a high bar set to show that a defendant's actions were extreme and outrageous, there have been cases here in New York courts have granted relief for intentional infliction of emotional distress for less serious behavior than that which would b "utterly

intolerable in a civilized society." For example, one claim alleged that a women's neighbor repeatedly made "hag-up telephone calls to her home. Flatley v. Hartman, 138 a.D.2d 345, 346 (N.Y. app. Div. 1988).

104. In Flatley, the Court held that the conduct complained of was actionable, even if no physical contact had occurred. Id. Further, there were "questions of fact as to whether [the defendant's] alleged conduct exceeded the bounds of decency and as to whether the plaintiff suffered genuine and severe distress as a result." Id. Similar questions of fact exist here.

105. Additionally, the Second Circuit has recognized that damages for emotional distress can be granted in cases where defendants have violated the FDCPA. See Teng v. Metropolitan Retail Recover, 851 F. Supp. 61, 69 (E.D.N.Y. 2000).

106. The Court in Teng held that "the wrong sought to be punished by [the FDCPA] is similar in nature to a tort cause of action based on outrageous and reckless conduct and is the type of wrong in which damages for emotional distress have traditionally been permitted." Id.

107. Here, Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich's abuse of the judicial process entitle Plaintiff to collect damages for the stress he suffered.

108. Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich purposely obtained a default judgment without properly serving process and then waited more than a year after the default judgment was entered before taking any further action.

106. Plaintiff continues to suffer by being unable to vacate the default judgment against him, having a default judgment noted on his credit report, and not being able to purchase a home due to the negative default judgment on his credit report. Defendants' actions in violating the FDCPA are directly to blame for Plaintiff's ongoing hardship.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury for all claims and issues in its Complaints to which it is or may be entitled to a jury by trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment from Defendants as follows:

A. For actual damages provide and pursuant to 15 U.S.C. section 1692(k)(a)(1);

B. For statutory damages provided and pursuant to 15 U.S.C. section 1692k(a)(2)(A);

C. For statutory damages provided and pursuant to 15 U.S.C. section 1692k(a)(2)(B);

D. For attorney's fees and costs provided and according to 15 U.S.C. section 1692k(a)(3);

E. A declaration that Defendants' practices violated the FDCPA;

F. Award injunctive relief ordering Defendants to cease the use of unfair and unconscionable means of collecting debt, including the use of "sewer service;."

G. Award injunctive relief ordering Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich to vacate the default judgment against Plaintiff;

H. Awarding Plaintiff damages for emotional distress suffered caused by Defendants Feldman, ABC, Cavalry As Assignee of Citibank, N.A., and Mandarich's FDCPA Violations; and

I. For any such other and further relief, as well as further costs, expenses, and disbursements of this action, as this Court may deem just and proper.

Dated: March 28, 2023

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

# **PRESERVATION NOTICE**

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents, and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors.

You are directed from this point forward to prevent any "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any of the information set forth hereafter.

**If you cause any such alteration, destruction, or change, direct it or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation**.

Electronically Stored Information:
In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to-any such electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:
In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter.

Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery on this case arises independently from any order on such motion.

Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we are likely to seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this complaint's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: March 28, 2023

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

**DEMAND FOR INSURANCE COVERAGE**

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: March 28, 2023

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.